Good morning, Your Honor. My name is Patrick Kilgore. I'm here representing Ms. Barrera, the appellant in this matter. I wanted to start with this case regarding the restitution involved. I think for the first category, I realize we're dealing with what I'd lumped together as private health care insurance companies, but with regard specifically to the non-disability health care insurance companies, which would have been Anthem, Blue Cross, Blue Shield, as well as UnitedHealthcare. With regard to the court's finding in that matter, I would argue that the loss is attributable to those two companies. The jury in this case, on the record, specifically found that Ms. Barrera was not guilty of that conduct. They had the specific choice in the verdict director. They checked the box regarding social security disability, conspiracy to commit social security disability, not the health care fraud box. With regard to the finding under the MVRA, I realize that broadened the previous act, but it's not so broad as to result in a finding in an order of restitution for what is actually acquitted conduct. That language was alleged specifically in the indictment with regard to those two companies, and again, the jury had the option with regard to that finding, and they made their choice, and they acquitted Ms. Barrera of that specific conduct. This is on Anthem? Yes, Your Honor. And what was the other one, Cigna? The other one, and I should have done a better job, but I kind of lumped everything together regarding the health care companies. But for purposes of this argument, I would say that Anthem, Blue Cross, Blue Shield, and UnitedHealthcare would be the health insurance companies not involved in disability. The other companies... I thought the government says those have been satisfied anyway by other defendants, so the issue would be moved. Is that true? Do you disagree with that? I don't disagree with whether or not it's been satisfied. I saw the motions filed by the government, obviously the motion to correct the judgment with regard to the award of $100,000... On Prudential? To Prudential, which actually should have been, I think, $75,000. But I don't want to talk about that right now. I'm asking whether you agree that the point you just raised is moot because somebody else has already paid them in full. I would say, I guess my response to that, Your Honor, would be that it's not moot because Ms. Barrera has actually made payments towards restitution, and certainly I don't object to the government's motion to supplement the record with regard to any payments made by any particular parties. But in the case cited by the government, I believe that was the case, the Bilant case in which a defendant had appealed an order of restitution to which his co-defendant had already paid. In this case, I think it's distinguishable from that because Ms. Barrera has actually made payments during the course, from the time that she has been sentenced up until now. But there were other restitution payees. Yes, Your Honor. And so if her money went to those other payees, then... That's certainly what I was going to mention. Why wouldn't the ones that have been satisfied by other defendants be moot? Well, and if you look at the attachments regarding, I think, the payments by Susan Schmitz and Kurt Schmitz, it looks like those amounts are all going into the same fund. And I don't know how they're distributed, and I don't know, I'm assuming that Ms. Barrera's payments would have gone into a general fund as well, and I don't claim to be an expert as to how the clerk distributes restitution. I would think from what I can gather, they see what amount comes in and from whom, and then how they distribute that, they have a way of doing that. But I think the issue is not mooted since Ms. Barrera has actually been making payments. Well, if it's determined that the payments that she made were all distributed to the non-private entities, in other words, the government, for which she was found guilty, would that not moot it? I certainly would not moot it as to, I don't think the other, there's still an outstanding balance from what I can tell with regard to, I believe, MetLife. And if I look at the attachments submitted, it's either $12,000 or, as the government contends in its brief, something around, somewhere around $22,000. Well, I guess we can ask the government if there's anything still owing to the private providers. Yes, Your Honor. And so in that regard, with regard to getting past Anthem and UnitedHealthcare, with regard to the remaining, what would be termed, disability insurance companies, I would argue that still by a preponderance of the evidence, that the district court erred in concluding that the government met its burden to show that her conduct was somehow approximately related to the losses to those companies. What about MetLife? Wasn't the, wasn't their loss caused by the conspiracy to defraud the United States? Well, I think, I think, I think the government still has to show at sentencing, as pointed out in the government's argument during sentencing, I still think they have to show by a preponderance of the evidence that Ms. Barrera's conduct approximately caused that loss and any other loss to the other disability insurance companies. And if you look at the entirety of the record and the things that they cite to for that, and you're mainly dealing with three individuals, Karen Kreinheider, Kurt Benkert, and Susan Schmitz, and some of the things they talk about, specifically with regard to Karen Kreinheider, is that Ms. Barrera somehow was present when she discussed that she was still working and was in the general area when Clarissa Pogue, Ms. Barrera's co-defendant, came out and made changes to an actual function report that was going to the Social Security Disability Office. And that directly relates, I think, to the inconsistent factual findings made by the district court in relation to Clarissa Pogue and the appellant, Ms. Barrera. Because if you look at what the transcript and what the government argued at sentencing regarding Clarissa Pogue, in which the district court did not order the additional amount of restitution to any of the private health care companies, and the arguments made by the government at that time and the language used is, but for the actions of Clarissa Pogue, this wouldn't have happened. She was involved in the incident of changing function reports, advising how to change function reports with respect to Ms. Kreinheider, involved in telling her to leave off specific doctor information or private doctor information, and arguing that she deserved a higher sentence than Ms. Barrera. And if you review the transcript, even the government recognized at the time and sought an explanation from the district court. So in that way, the sentences become arbitrary. And that goes directly, I think, to the 3553A factor, specifically promoting respect for the law. When you have a finding that Clarissa Pogue, who was clearly, in the government's view, more culpable than the appellant in this matter, and the district court does not award that amount of additional restitution in her case, but yet makes the finding in Ms. Barrera, the appellant's case, I think that that's an abuse of discretion and error, and certainly I would ask the court to remand the case and absolve the judgment of restitution and the additional $200,000 and some thousand against Ms. Barrera. Because again, that goes directly to, I think, the sentencing factors in 3553A. I see what I have. Thank you for your argument. You may reserve the balance. Thank you. Mr. Van Ostrin, we'll hear from you. Chief Judge Colleton, may it please the court, there's no need to overcomplicate this case. The path of least resistance to correctly resolve this case is as follows. First, the court should grant the motion to supplement the record that the government has filed. That will allow the record to correctly reflect that the vast majority of this $200,000 in restitution has already been repaid. Second, under Rule 12.1, the court should remand for the very limited purpose of allowing the district court to enter the order that it has already indicated that will correct the proper payee from prudential to AIG and correct the amount from the $100,000 that was entered to the correct amount of $75,086.30. Given the fungibility of money, how can we tell that other defendants paid for the ones you now say are moot? Your Honor, the record may be a little bit ambiguous in that regard, but I think it's very important what the court recognized just a moment ago. That in fact, Ms. Barrera was ordered, and it has not been contested, to pay $339,000 in restitution to the Social Security Administration. I believe the timing of her payments vis-a-vis the other payments that were made by the co-defendants would also obviate that issue because I believe it to be the case, I don't want to mislead the court, but I believe it to be the case that those payments had already been made at the time that she was ordered and began making those payments. But again, even if there were some issue with that, it would not require reversal because she was ordered to pay the $339,000 in restitution. Is there some way to make sure that whatever she's paid in has been deducted from that obligation, 100%, and that none of it was diverted to these private insurers over which there's a dispute? That none of it was incorrectly diverted. Your Honor, if we need to supplement the record to reflect that, I think we could certainly do that as well before the court's resolution of the case, and we could make sure that that My understanding of the record, my reading of the record, I believe it is silent or at least ambiguous on that point. I also don't believe that that point was raised in the briefing. I don't believe that that's a valid basis to reverse because I don't believe that that was properly raised. Well, he's raised that, I thought he's raised that there's no basis for making her pay restitution to some of these entities. And your response is, well, you don't have to get into that because they've already been paid. That's right. They've already been paid, so that's moot. She doesn't... Because they've been paid by other people. That's right, Judge. She doesn't contest the fact, though, that she owes the $339,000. So if there are some of these payments that have already been made, they should go to satisfy that $339,000. Again, if we need to clarify the record in that regard, the government's certainly happy to submit a short supplement to do that. Well, I understood Appellant Counsel to say, however, that most of it's been satisfied, but there's still either $12,000 or $22,000 outstanding that's payable to the private payees. What about that? MetLife, I think he said. That's right. The outstanding amount, Your Honor, is $22,639 that is payable to MetLife, which is the private disability insurer. The reason that that came about is MetLife, after Mr. Benkert's sentencing, submitted additional outstanding amounts that were owed to it. So that's the reason for that difference in amount. But as the court pointed out- Does the record support ordering her to pay MetLife on a conspiracy to defraud the United States? It absolutely does, Your Honor. How so? Because the MVRA says that when there is criminal conduct undertaken in the course of a conspiracy, that any victim of that criminal conduct is subject to restitution. And that's what MetLife was in this case. It was part and parcel of the conspiracy for which Ms. Barrera was convicted, that these private disability insurers would have fraudulent claims submitted to them. The record also supports that Ms. Barrera, in particular, was tied to those private submissions. The record says, in Volume 3 of the trial transcript, at 191 and at 225, she talks about being responsible for billing. There was testimony from a Social Security employee who explained that if someone was still working, they would be automatically disqualified from receiving disability benefits. So it was, again, part of the manner and means of this conspiracy that in the short term that these fraudulent applicants would stop working until they received benefits, they would submit these fraudulent claims to their private insurers. MetLife was such an insurer, it is therefore owed restitution. And the district court was well within its discretion to order that. And your point is, though, that that's a step toward getting Social Security disability, right? Exactly right, Your Honor. It's all part of the flow of the scheme. It's part of the manner and means of the conspiracy, Your Honor. It was alleged as such, and that's exactly what it is. Okay. What do we make of this argument that there's a total inconsistency between the two defendants? One is even arguably more culpable than Barrera, and she doesn't have to pay any restitution, and Barrera does. Your Honor, the United States made that argument at sentencing, but the court can, of course, affirm based on any valid grounds in the record. And the fact of the matter is, the district court was justified in the decision that it made as to these defendants. Again, the fact that Ms. Barrera was tied specifically to the billing of these insurance companies, I think reiterates that the district court saw it as appropriate that she should be responsible for restitution to these private companies, whereas Ms. Pogue, who was a medical assistant, was mostly involved in fraudulent and unnecessary IV draws and things of that nature. It might not have been foreseeable to her. Did the district court say that, or is that your post hoc rationalization? Well, I think that it was the district court's rationalization, Your Honor. It's not in the record, but again, of course, the district court watched the entire trial. The district court was aware of these different players, their testimony at trial, what the evidence was. And so I, again, think that the district court was relying on that in making its decision, and its decision is well supported. The one other fact that I want to... Even if the judge were wrong about that and Pogue should have been assessed restitution, is that a basis to reverse this defendant's restitution, or is it just a windfall for Pogue? I don't think it's a basis to reverse here, Your Honor. I mean, that would have to be an issue that the United States could have appealed as to Pogue. I don't know Pogue, but the government decided not to appeal, but I wonder why that would give this defendant any basis for relief. Well, I think your wonder is justified, Judge, because I absolutely don't think that it would or that it does. The one other fact that I wanted to point the court to that I think in particular is important for explaining why the district court made the decision that it did was Mr. Bankert's testimony. That is in volume three of the trial transcript, page 63. Mr. Bankert talks about the fact that he paid specifically PowerMed for submission to his private disability insurer, that being MetLife. And when there was a dispute about how much he should pay for that, it was Ms. Barrera who settled that dispute. She actually even... Her word superseded that of the supervising doctor. So she was clearly intimately involved in defrauding these private disability insurers. It makes sense that the district court therefore found Ms. Barrera culpable. I am happy to... On this motion to remand and indicative ruling and so forth, how is that a clerical error? Is it more than a clerical error? You were trying to change the payee and change the amount, as I understand it. I think it is just a clerical error, Your Honor, because it's the identity of a payee when there were a number of insurance companies involved here. And again, it was the difference in amount based on what had been submitted to the district court. Rule 36 also talks about omissions, oversights. I think, again, the rationale supporting the award of restitution is not really in question here. It's just the matter of the identity of the payee, the amount. That is something that can be properly corrected under Rule 36. And therefore, the indicative ruling under Rule 37, I believe, is appropriate here. Why did the amount change, if you could refresh my memory on that? I believe it was just an erroneous submission by the United States, Your Honor, as to the amount that Mr. Benkert had actually received. AIG was ultimately... Well, it's not a clerical error in the judgment, then. What you're saying is the record has been supplemented after the fact to make it more accurate or something? I don't think that the court has to look at it as a supplement to the record. The United States made an erroneous submission that it quickly corrected to the district court. The district court would be able to correct that under Rule 36, but for its lack of jurisdiction because of the pending appeal. I think that's exactly the kind of fix that is appropriate under Rule 37. I think that is, again, the easiest and cleanest way to resolve this case. It's not necessary for a full remand, just so the district court can do what it has already said in its indicated ruling that it would do. I'm not sure why it's a clerical error, but it does say in Rule 36, an error in the record arising from oversight or omission. Maybe that's... Precisely. Maybe that's what you're relying on. That's exactly right. I think this was the very definition of an oversight, and it was corrected, can be corrected in this way. I appreciate the court's time. We ask the court to affirm. Thank you. All right. Thank you for your argument. Would you care to make a rebuttal? May it please the court. Just briefly, Your Honor, addressing what was said about Kurt Benkert and regarding the difference between Ms. Barrera and Ms. Pogue with regard to her having the ability to override management and medical billing and that sort of thing. If you review the record, it is consistent, and even the government's witnesses describe her as the office receptionist, and part of her duties would be what you would think they taking calls, presenting the pricing schedule, collecting fees, providing receipts. The medical billing had to do with inputting information she received, I believe, just from Dr. Carboni regarding whatever she was doing regarding her chiropractic practice. So in the particular instance that the government now claims supports that she had, Ms. Barrera had some big oversight or connection to management as to the decisions of PowerMed. When Mr. Benkert showed up, it was Dr. Carboni, according to the transcript, that said, oh, that's going to be more than what you paid last time for this paperwork. Ms. Barrera was never connected to filling out any paperwork or even submitting any paperwork. The only paperwork she handled would be like a pricing schedule for PowerMed, according to the record. I think Dr. Hobbs was on vacation, and Ms. Barrera just said, oh, just pay what you paid last time. That's fine. He's not here to straighten it out. I'm sorry. I'm out of time. Well, thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file opinion in due course.